597 P.2d 44

The STATE of Idaho, Plaintiff-Respondent,

v.

John A. SEIFART and Robert Stanford, Defendants,

and

Davis R. Stewart, Defendant-Appellant.

No. 13030.

Supreme Court of Idaho.

July 5, 1979.

322

Edward J. Anson, Wallace, for defendants.

David H. Leroy, Atty. Gen., Eugene A. Ritti, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Justice, Pro Tem.

Davis R. Stewart appeals from a sentence imposed following entry and acceptance of a plea of guilty to the crime of robbery. Pursuant to I.C. § 18–6503, the district court sentenced the appellant to the custody of the Idaho State Board of Corrections for "an indeterminate period of time not to exceed the rest of his natural life." Appellant's sole issue presented on this appeal is whether the trial court abused its discretion and sentenced the defendant to an excessive sentence.

It is well established that the sentence to be imposed in any particular matter is within the discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion appears. A sentence that is within the limits prescribed by statute ordinarily will not be considered an abuse of discretion. *State v. Lawrence*, 97 Idaho 775, 554 P.2d 953 (1976); *State v. Mooneyham*, 96 Idaho 145, 525 P.2d 340 (1974); *State v. Trowbridge*, 95 Idaho 640, 516 P.2d 362 (1973).

Here the sentence imposed was not beyond the statutory maximum limit prescribed for the crime of robbery. I.C. § 18–6503. Where a sentence is imposed within the statutory limits, an appellant has the burden of showing a clear abuse of discretion on the part of the court which imposed the sentence; this showing is dependent upon the circumstances of each particular case. *State v. Chapa*, 98 Idaho 54, 558 P.2d 83 (1976); *State v. Cunningham*, 97 Idaho 650, 551 P.2d 605 (1976); *State v. Ogata*, 95 Idaho 309, 508 P.2d 141 (1973).

From the record in this case it appears that the appellant and a co-defendant entered the home of Mr. and Mrs. Jack Gaslar in Kellogg, Idaho, on the evening of August 4, 1977. The entry was made through a back door; the appellant and his companion had been drinking and were

brandishing a sawed-off shotgun. The Gaslars were an elderly couple and were somewhat debilitated because of their advanced ages. The intruders demanded the keys to the Gaslar's vehicle and Mr. Gaslar's billfold. Mr. Gaslar, who was lame, was shoved about by one of the men. Mrs. Gaslar escaped and fled the house and was chased by one of the men until she reached a neighbor's home. There the police were called.

The intruders then fled and were subsequently apprehended. At the time of the arrest, they were in possession of the Gaslar's car keys and the sawed-off shotgun. Thereafter the appellant and his co-defendants pleaded guilty to the charge of robbery. A further accusation of possession of a firearm during the commission of the robbery in violation of I.C. § 19–2520, was dismissed by the State.

At the time of the incident, the appellant was a parolee from the Idaho State Correctional Institution, having been released from custody on March 23, 1977. The presentence investigation conducted in this matter following the appellant's plea of guilty to the robbery charge, shows a lengthy history of criminal activity on the part of the appellant, both in his own name and by admitted aliases. It shows one felony of grand larceny reduced to a misdemeanor of joyriding, in 1973; a conviction for first degree burglary in 1975 whereby the appellant was sentenced to the State penal institution for a period of time not to exceed nine years, with the court retaining jurisdiction for one hundred and twenty days. At the expiration of the retained jurisdiction, apparently the appellant was placed on probation because he was thereafter convicted in 1976 of grand larceny, received a concurrent sentence of five years and was returned to the penitentiary as a probation violator.

During the proceedings at sentencing in this matter, the trial judge reviewed the facts of the incident and the appellant's prior criminal record. He observed:

"Well, I don't think that there is anything I can add to this other than the fact that I would agree that the Court has no alternative than to provide a long period of incarceration for the protection of the public."

We agree with the conclusion of the trial court, and find that there was no abuse of discretion in imposing a life sentence, given the circumstances of the crime and the past record of the appellant.

Appellant further argues that the sentence imposed upon him was excessive when compared with a lesser sentence given to one of his co-defendants for the active participation of that co-defendant in the robbery, and also when compared with other sentences imposed in Shoshone County, Idaho, for robbery convictions occurring during the past twenty years.

 It does not follow that disparity of sentences between multiple defendants involved in the same criminal activity, or between different defendants for committing similar crimes, constitutes excessiveness of sentence as to any particular defendant. An argument somewhat comparable to the appellant's was raised in *United States v. Vita*, 209 F.Supp. 172 (E.D.N.Y. 1962). There the petitioner Vita, by way of an application for Writ of Habeas Corpus, contended that, by receiving a fifteen-year sentence while a co-defendant received only a six-year sentence for participation in the same bank robbery, he had been denied the equal protection of the laws under the Fourteenth Amendment to the Constitution. By implication, he also claimed that he had been subjected to cruel and inhuman punishment in violation of the Eighth Amendment to the Constitution. The Court treated the allegations of the petition as setting forth a claim of violation of due process of law under the Fifth Amendment, and stated:

"Assuming that due process under the 5th Amendment also means equal protection of the law, there can be no doubt that Vita received equal protection of the law when he was afforded a trial in accordance with the Constitutional requirements and an opportunity to appeal in forma pauperis, which resulted in the af-

firmation of his conviction. *Due process and equal protection of the law, of course, do not mean equal sentences in criminal cases.* All these defendants had a trial which accorded with the requirement of due process of law. In this case the record shows that Vita and Pierson had different backgrounds and played different parts in the commission of the crime. * * * Under the circumstances the Court felt there should be a disparity in the sentences of these defendants both for the protection of the community and the rehabilitation of the respective parties. * * * "

There is no requirement under the due process clause or any other clause of the Constitution which imposes a mandate upon the Court to render uniform sentences against criminal defendants. Otherwise the imposition of sentences would be an inflexible mechanical operation without any humanitarian or social consideration rather than an effort to make the punishment fit not only the crime but also the character and needs of the individual and the requirements of the community. In reaching its conclusion the Court was compelled to weigh the time needed for the rehabilitation of this particular defendant and the necessity for a deterrent as well as the demands of the community for protection. In *United States v. Litterio*, D.C.Tex., 1957, 153. F.Supp. 329, aff'd, 5 Cir., 244 F.2d 956, cert. denied, 355 U.S. 849, 78 S.Ct. 75, 2 L.Ed.2d 58, and in *Howard v. Fleming*, 1903, 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121, similar assaults have been made against sentences because of a disparity in terms imposed upon co-defendants, without success.

There is no merit in Vita's claim concerning cruel and inhuman treatment because the statute itself permits the imposition of a maximum of twenty-five years penalty for the commission of the crime; it would be rather late in the day for this Court to attempt to find this statute unconstitutional. A court should always be fearful that its sentence might be too harsh. * * .* Actually, Vita's com-

plaint is directed against the alleged leniency of Pierson's sentence, which Vita apparently claims should be used as a yardstick in imposing his sentence. Needless to say, such standard is neither a basis for his sentence nor for relief * * *.

From the files and records in this case and after hearing counsel for the parties, the Court finds that there was sufficient reason for the disparity in the sentences and that there has been no denial or infringement of the petitioner's constitutional rights; accordingly the motion is denied." (Emphasis supplied) 209 F.Supp. 172, at 173–174.

As stated by another court:

"As a general rule, so long as a sentence is within the statutory maximum, the court will not exercise its supervisory powers to inquire into the propriety of a sentence, even when that sentence creates a disparity with the sentences of co-defendants. *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *United States v. Willard*, 445 F.2d 814 (7th Cir. 1971); *United States v. Melendez*, 355 F.2d 914 (7th Cir. 1966)" *United States v. Rauhoff*, 525 F.2d 1170, 1178–1179 (7th Cir. 1975).

In addition to the authorities cited in *Vita* and *Rauhoff*, See also *State v. Tuscano*, 21 Conn.Supp. 455, 158 A.2d 598 (1958); *People v. Pierce*, 387 Ill. 608, 57 N.E.2d 345 (1944); *United States v. Hasbrouck*, 449 F.2d 1303 (3d Cir. 1971); and *Petition of Cohen*, 217 F.Supp. 240 (E.D.N.Y.1963).

In conclusion, we find that the sentence imposed upon the appellant was not excessive and that there was no abuse of discretion committed by the district court. The sentence is affirmed.

SHEPARD, C. J., BAKES and BISTLINE, JJ., and BEEBE, J., pro tem., concur.